**In the Matter of Richard A. CARLSON, Bankrupt.**

No. 22588.

United States District Court
C. D. California.

Oct. 22, 1968.

Thomas C. Lynch, Atty. Gen. of California, Philip W. Marking and Neal J. Gobar, Deputy Attys. Gen. of California, by Neal J. Gobar, Los Angeles, Cal., of counsel, for appellant, Bd. of Equalization of the State of California.

Slate & Leoni, Los Angeles, Cal., by Andrew F. Leoni, Los Angeles, Cal., of counsel, for respondent, Richard A. Carlson.

## DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW, and ORDER AFFIRMING ORDER OF REFEREE

HAUK, District Judge.

Respondent filed a Petition for Restraining Order before A. K. Phelps, Referee in Bankruptcy, seeking to restrain and enjoin the Board of Equalization of the State of California from levying on any after-acquired property of the Bankrupt. An Order to this effect was made by the said Referee.

The Appellant, the Board of Equalization of the State of California (hereinafter designated as "Board") filed a Petition for Review.

The jurisdiction of this Court is asserted pursuant to Section 39(c) of the Act of Congress Relating to Bankruptcy (11 U.S.C. § 67).

The facts, admitted and uncontested by both Appellant and Respondent, are set forth in the Referee's Certificate on Review, his Memorandum Opinion, and his Findings of Fact, Conclusions of Law and Order herein.

Richard A. Carlson, the hereinabove named Bankrupt, (hereinafter designated "Bankrupt") filed a Voluntary Petition in Bankruptcy on September 22, 1967. At the time of the filing, he was indebted to the Board under the Sales and Use Tax for a tax liability which arose more than three years prior to the filing of the instant Petition in Bankruptcy, and that liability was then secured by liens which had been recorded by the said Board.

Subsequent to the filing of the Petition in Bankruptcy, the Board levied on the salary of the bankrupt which had been earned after the filing of the Petition. A Restraining Order was sought from the Referee by the Bankrupt to release said funds, and, further, to enjoin and restrain said Board from levying on after-acquired property of the Bankrupt. An Order to this effect was made by the Referee.

Thereafter, the Board filed a Petition for Review from the Order of the said Referee and the specific question raised on review, which is conceded by both Appellant and Respondent to be the sole question, is the interpretation of the 1966 Amendment to Section 17 of the Bankruptcy Act, more particularly whether or not a taxing authority, in this case the Board, which on the date of a filing of a Petition in Bankruptcy has a valid recorded lien for unpaid tax liability, is precluded by the 1966 Amendment to Section 17 of the Bankruptcy Act from enforcing that lien against the property of the taxpayer which may be acquired by said taxpayer after the commencement of the bankruptcy proceeding.

The Court has examined the entire record, which includes among other things, the Referee's Certificate on Review, the Application of the Bankrupt to Restrain and Enjoin the Board from levying upon after-acquired property of the Bankrupt, The Response of the Board to said Application, the Findings of Fact and Conclusions of Law of the Referee and the Points and Authorities submitted by Appellant and Respondent. The matter has been extensively argued by

counsel in writing. The Court has reviewed all of this material, and the Court being fully advised in the premises, renders its Decision in favor of the Bankrupt-taxpayer and against the Board of Equalization, affirming the Referee's Order discharging the tax liability and restraining the Board from levying on taxpayer's after-acquired property.[1]

## DECISION

Section 17, sub. a(1) of the Bankruptcy Act (11 U.S.C. § 35) was amended, effective October 3, 1966, to provide as follows:

"Section 17. Debts Not Affected by a Discharge. a. A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: Provided, however, That a discharge in bankruptcy shall not release a bankrupt from any taxes (a) which were not assessed in any case in which the bankrupt failed to make a return required by law, (b) which were assessed within one year preceding bankruptcy in any case in which the bankrupt failed to make a return required by law, (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, (d) with respect to which the bankrupt made a false or fraudulent return, or wilfully attempted in any manner to evade or defeat, or (e) which the bankrupt has collected or withheld from others as required by the laws of the United States or any

State or political subdivision thereof, but has not paid over; but a discharge shall not be a bar to any remedies available under applicable law to the United States or to any State or any subdivision thereof, against the exemption of the bankrupt allowed by law and duly set apart to him under this Act: And provided further, That a discharge in bankruptcy shall not release or affect any tax lien."

■■ There is no question, and all parties to the controversy agree, that the tax in question became due and owing more than three years before the commencement of the bankruptcy proceeding and apparently, it would be admitted by the Appellant that the bankrupt would be entitled to a discharge of those particular tax claims, relying upon the last clause of the amended statute set forth above and in particular which states as follows: "A discharge in bankruptcy shall not release or affect any tax lien." The Bankrupt, on the other hand, takes the position that that tax lien is to apply only to property belonging to him as of the date of the filing of the Petition in Bankruptcy, and that the lien does not survive to encompass after-acquired property. The Bankrupt further argued that an interpretation as urged by the Board is contrary to the plain language of the amended statute; that it is in direct conflict with the legislative history of the amended statute; and that the interpretation of the Board, if adopted, would destroy the intent and purposes of the statute, as amended. As will be set forth hereinafter, the legislative history supporting this enactment emphatically supports the interpretation placed upon Section 17, sub. a(1) by the Bankrupt. However, this Court would find it unnecessary to even examine that legislative history (but it will do so) since the meaning of the statute, as amended,

1. Our decision is in accord with the only cases directly bearing on this problem: In the Matter of Walter R. Braund and Virginia M. Braund, Bankruptcy Nos. 986–IH and 987–IH, decided in a memorandum order of August 29, 1967, by my brother Judge Irving Hill of the Central District of California; and United States v. Ulises A. Sanabria, No. 67–C–505, Northern District of Illinois, Eastern Division, an unreported case without memorandum opinion.

is plain and unambiguous. The Supreme Court of the United States has stated on numerous occasions that where the language of a statute is clear resorting to legislative history is unnecessary. Ex parte Collett, 337 U.S. 55, 69 S.Ct. 944, 959, 93 L.Ed. 1207 (1948). The language of the statute is the best and most reliable index of its meaning. Department and Specialty Store Empl. Union, etc. v. Brown, 284 F.2d 619 (9th Cir. 1960).

With this basic rule of construction in mind, the Court now looks at the language of Section 17, sub. a(1), as amended. Briefly, that Amendment provides that all taxes which were legally due and owing more than three years before bankruptcy are discharged by the bankruptcy proceedings.

The amended section set forth five exceptions to the general statement made above to the effect that a discharge in bankruptcy will not release the bankrupt in any taxes in situations where:

1. The Bankrupt failed to file a return.

2. Which was assessed within one year preceding bankruptcy and any case in which the Bankrupt failed to make a return as required by law.

3. He has made a false or fraudulent return.

4. Has been in the process of exhausting administrative or judicial remedies, and

5. Has failed to pay any withholding tax.

The statute then goes on to say that tax liens shall remain unaffected. It is clear that the statute does not say that tax claims which have been made the subject of tax liens shall remain unaffected or not discharged. If Congress had intended such a result the same could have been easily provided for in the statute but it did not do so. The meaning of the statute is plain: taxes (with the exceptions as noted above) over three years old are discharged whether a lien has been filed or not. However, the lien itself remains unaffected, that is, the Board has a lien upon the property of the bankrupt which was owned at the time of the filing of the Petition in Bankruptcy. Any other construction of the statute requires reading into words which do not appear on its face.

The main authority, the Board submits in support of its interpretation of Section 17, sub. a(1), were statements of Senator Ervin on the Senate floor as follows:

"[H.R. 3438] provides where the Internal Revenue Service has filed a lien, and thus given the general public which deals with the prospective bankrupt knowledge of the Federal Government's claim, that those *taxes—*regardless of how long they antedated the bankruptcy—are still valid. *Other tax claims* which originated prior to 3 years before bankruptcy and *which have not been reduced to a lien*, are discharged in bankruptcy * * *." [Emphasis added.] Cong.Rec. June 21, 1966, p. 13172.

"* * *

"One point which I would like to make clear is that *this bill does not affect taxes, if the tax has been reduced to a tax lien and made part of the public record.*" [Emphasis added.] Cong.Rec. June 21, 1966, p. 13182.

The first of these remarks was made as a part of Senator Ervin's lengthy and detailed opening statement upon initiating consideration of H.R. 3438 by the Senate. The second is from a prepared written statement presented by Senator Ervin on H.R. 3438.

It is the contention of the Board that Senator Ervin was taking the position that if a tax lien exists, the underlying tax claim cannot be discharged by choosing selectively from Senator Ervin's statements on the Senate floor. However, a thorough examination of that Senate debate makes it clear that such was not Senator Ervin's position.

Senator Ervin began the debate by reading into the Congressional Record

certain portions of the report of the Committee on the Judiciary. The key portion which he read provided as follows:

"While under this bill, unsecured tax claims due and owing more than 3 years prior to bankruptcy would be dischargeable, there is no intention to place any time limit on otherwise valid tax liens. As with other secured claims like mortgages and conditional sales contracts, the purpose of the lien is to give the creditor a property interest which is indefeasible in bankruptcy. *Thus, to the extent that the tax authorities may satisfy their claims out of the security they hold they will be unaffected by the discharge* regardless of the fact that the underlying debt may include taxes for years prior to the 3-year period preceding bankruptcy. The second proviso to section 17a(1) proposed by section 2 of this bill emphasizes this legislative intent." (Emphasis added)

What Senator Ervin was saying was that to the extent the Board has a valid tax lien, that lien remains unimpaired.

This treatment accorded the Board is no different from the treatment of a lien holder who holds, for example, a security interest in the Bankrupt's automobile. Such a secured creditor has the right to sell the automobile to satisfy his lien. However, if the proceeds of that sale are not sufficient to pay the secured creditor in full, the balance of his claim is that of a general, unsecured creditor and it is discharged by virtue of the bankrupt's discharge.

Both the House and the Senate Committee Reports make it crystal clear that this is the treatment intended for tax claims where liens have been filed. These reports make three points. They first point out that over the past 28 years, taxes have come to represent an increasingly large portion of the average bankrupt's debts. In many cases, taxes are the largest single debt. For this reason, the nondischargeability of taxes has served to prevent the Bankruptcy Act from performing its main purpose, which is the financial rehabilitation of the bankrupt. Secondly, these Committee Reports point out there was unfair discrimination against the private individual and the unincorporated small businessman going through bankruptcy. The corporate bankrupt ceases operation after bankruptcy, although the enterprise often continues in a different form. The practical effect was to leave tax claims against corporate bankrupts unsatisfied. The individual and unincorporated small businessman was afforded no such advantage. The final point made by the Committee was that although tax liens are left unaffected under the proposed legislation, the lien applies only to assets existing as of the date of bankruptcy. The underlying tax claim is fully discharged. The following quotations from Senate Report No. 1158, 89th Cong., 1st Sess. 2, 3 (1966) fully support the statements above:

"Under existing law debts for taxes are not affected by a discharge in bankruptcy (sec. 17a(1) of the Bankruptcy Act, 11 U.S.C. 35(a) (1)). Similarly, taxes are entitled to a priority of payment, in advance of the payment of any dividend to general creditors, which is unlimited as to time (sec. 64a(4), 11 U.S.C. 104(a) (4)). This applies to all taxes whether due to Federal, State or local governments. Although taxes have enjoyed this special status for many years, the enormous increase in the tax burden during recent years and the consequent impact on both the distribution of a bankrupt's estate and his financial rehabilitation, require a modification of that status.

"There are two aspects to the problem. The first of these involves the nondischargeability of taxes under section 17a(1) of the present law. Frequently, this prevents an honest but financially unfortunate debtor from making a fresh start unburdened by what may be an overwhelming liability for accumulated taxes. The large proportion of individual and com-

mercial income now consumed by various taxes makes the problem especially acute. Furthermore, the nondischargeability feature of the law operates in a manner which is unfairly discriminatory against the private individual or the unincorporated small businessman. Although a corporate bankrupt is theoretically not discharged, the corporation normally ceases to exist upon bankruptcy and unsatisfied tax claims, as well as all other unsatisfied claims, are without further recourse even though the enterprise may continue in a new corporate form * * *

"While, under this bill, unsecured tax claims due and owing more than 3 years prior to bankruptcy would be dischargeable, there is no intention to place any time limit on otherwise valid tax liens. *As with other secured claims like mortgages and conditional sales contracts, the purpose of the lien is to give the creditor a property interest which is indefeasible in bankruptcy. Thus, to the extent that the tax authorities may satisfy their claim out of the security they hold they will be unaffected by the discharge regardless of the fact that the underlying debt may include taxes for years prior to the 3-year period preceding bankruptcy.* The second proviso to section 17a (1) proposed by section 2 of this bill emphasizes this legislative intent. There is no intention to alter the relative position in the distribution of the bankrupt's assets which is now given to a tax lien on personalty unaccompanied by possession by the postponement provision in section 67c." (Emphasis added)

■ These two Committee Reports accurately set forth the true intent of the Congress. In the course of oral argument on the Senate Floor, the choice of words by a Senator is not always accurate or exact. For this reason, courts have held that statements in debate are not a proper measure of the contents of a statute. Gan Seow Tung v. Carusi, 83

F.Supp. 480 (S.D.Cal.1949). While such statements in debate may be considered, they are held to be a highly doubtful aid in statutory construction. Goodyear Tire and Rubber Company v. F. T. C., 101 F.2d 620 (6 Cir.), cert. denied 308 U.S. 557, 60 S.Ct. 74, 84 L.Ed. 468 (1939).

■ Reliance upon statements made by Senator Ervin during debate should not be permitted to derogate from the true legislative intent. The Supreme Court has cautioned the courts that Senate debate is not entitled to carry the same weight as carefully considered Committee Reports. United States v. International Union of United Auto, Aircraft and Agr. Implement Workers of America, 352 U.S. 567, 77 S.Ct. 529, 1 L.Ed.2d 563 (1947).

■■ There is a recognized judicial maxim that statutes must be construed to carry out their legislative purpose. Owensboro Wagon Co. v. C. I. R., 209 F.2d 617 (6th Cir. 1954). The quotations above from the Committee Reports make it plain that the purpose of the Congress, in amending Section 17, sub. a (1), was to enhance the individual's opportunity to financially rehabilitate himself in bankruptcy, by eliminating his old tax debts. Unfortunately, if the Board's view is accepted, that purpose can and will be entirely frustrated, for if the filing of a tax lien prevents the discharge of tax debts over three years old, the Board will always automatically file tax liens within three years of the due date.

■ The courts have cautioned that the Congress' purpose in enacting legislation and the evil to be remedied thereby are paramount in determining the proper construction. In re Park Distributors. Inc., 176 F.Supp. 38 (S.D.Cal. 1959). Special attention must be given to the evils which the statute is designed to overcome and the statute should be interpreted so as to effectuate rather than destroy it. United States v. Yee Ngee How, 105 F.Supp. 517 (N.D.Cal.

1952). Section 17, sub. a(1) can only serve its intended purpose by correctly construing it to mean claims over three years old are discharged, even though tax liens on existing property remain unaffected.

■ Another universally accepted maxim of judicial construction is that statutes which are intended to be remedial in nature should be liberally construed. Sablowsky v. United States, 101 F.2d 183 (3rd Cir. 1938). Congress has made it clear that its intention in amending Section 17, sub. a(1) was to remedy an existing injustice: the nondischargeability of tax claims in bankruptcy. This Court should not aid the government in its efforts to impose an unwarranted limitation upon that remedy.

■ On the other hand, it is a cardinal rule of judicial construction that exceptions must be strictly construed. Midland Cooperative Wholesale v. Ickes, 125 F.2d 618 (8th Cir.), cert. denied, 316 U.S. 673, 62 S.Ct. 1045, 86 L.Ed. 1748 (1942). This is particularly true where the exception relates to a statute which is remedial in purpose. Korherr v. Bumb, 262 F.2d 157 (9th Cir. 1959). For this additional reason, the exception preserving tax *liens* should not be magnified into an exception preserving tax *claims*.

It should be pointed out that the Board, in taking the position it has in this matter, is attempting to convince this Court to accept arguments which were rejected by the Congress in passing this remedial legislation. Professor Frank Kennedy of the University of Michigan, a member of the National Bankruptcy Conference, and one of the key proponents of this legislation, predicted that the government would make another effort to destroy the amendments to Section 17, sub. a(1) at the judicial level. In an article entitled, "The Bankruptcy Amendments of 1966" (which appeared in 1 Georgia Law Review 149 and in serial form in the January and April, 1967, Journal of the National Conference of Referees in

Bankruptcy) stated at pages 178 and 179 of the Georgia Law Review article:

"The second proviso of section 17a (1) states simply 'That a discharge in bankruptcy shall not release or affect any tax lien.' Counsel for both the Treasury and Justice Departments seem to have been completely mystified by the last two clauses of the amendment of section 17a(1).[120] The notion that a claim should be discharged and yet be enforceable against exempt property or to the extent secured by a lien against pre-existing property transcended their conception of a discharge as either an absolute bar or utter nullity. The objection of the Government that the clauses created 'an internal inconsistency' which would raise 'many grave problems'[121] could not be taken seriously, however, by anyone who has examined the nature and operation of a discharge in bankruptcy.[122]

"It has been reported that the Government now intends to rely on the second proviso as a basis for enforcing discharged tax claims against after-acquired property whenever notice of assessment has been filed before bankruptcy. Whether a tax lien is perfected by notice filing is an irrelevancy insofar as its enforceability against the tax debtor is concerned, but if all federal taxes assessed before bankruptcy survive discharge, section 17a(1) saving only certain taxes if assessed within a year before a bankruptcy makes no sense at all. As the discussion of the second proviso in the legislative report indicates,[123] its purpose is to accord the same post-discharge treatment to tax liens as that accorded to mortgages and other consensual security interests. The discharge of tax claims over three years old will not affect their enforceability against valid security held at bankruptcy. The clear implication of the discussion is that after such security is exhausted, no deficiency may be asserted against any after-acquired property.

"The role of a discharge in withdrawing any basis 'for the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective' was established in the classic case of Local Loan Co. v. Hunt.[124] That case also established the extraordinary jurisdiction of the bankruptcy court to enjoin state court litigation which threatened to frustrate the benefits of the decree of discharge, and which would have gone against the bankrupt unless and until he had carried his case from the municipal court through the intermediate court of appeal and supreme court of the state to the Supreme Court of the United States.[125] If the Government does take the position that the filing of a notice of assessment before bankruptcy immunizes a federal tax claim from discharge as against post bankruptcy acquisitions, a case falling more clearly within the scope of both aspects of Local Loan Co. v. Hunt would be difficult to imagine.[126] The summary remedies available to the Government, the smallness of the stake, the unequal position of the taxpayer and the Government in litigating the merits of the controversy, and the notorious unwillingness of the Service to abide by adverse rulings by lower courts all argue for exercise by the bankruptcy court of its power to vindicate its decree particularly when and if the Government seeks to enforce a discharged tax liability against post bankruptcy earnings." (Footnotes omitted.)

It is incumbent upon this Court to reject the contentions of the Treasury Department and effectuate the remedial purpose intended for this legislation by Congress, by discharging the tax claims in question.

The Board in its Argument further points out that Congress had recognized a policy that certain obligations be paid after bankruptcy which, in essence, have resulted in their not being dischargeable under Section 17 of the Bankruptcy Act. But, as pointed out by the Board in its Memorandum, the discussions as well as the reports clearly show that there is a compromise being sought between the necessity of the taxes being paid and the desire to allow a fresh start.

The Board contends that the discussions on the floor of the Senate show the basic objections of the sponsor and the Judiciary Committee was the secret Federal lien and its adverse effect on the taxpayer and other creditors. They point out that most State taxes, including those here involved, can obtain lien rights only by recording a lien and, further, that the secret Federal lien has priority over the recorded State lien. The Board then goes on to state that there would be a disastrous effect if the Bankrupt's interpretation of Section 17 were followed. However, again, what the Board is attempting to do is attempting to read into the Act, or have read into the Act, that there should be exceptions, but unfortunately Section 17, as amended, makes reference only to taxes owing to the United States and the section reads in pertinent part as follows:

"* * * are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy."

It is thus plain from the very language of the section itself that Congress was not talking, or not considering, only Federal liens or Federal taxes, but were concerned with, and did deal with, taxes owed to any taxing authority.

In accordance with the foregoing, which also shall constitute Findings of Fact and Conclusions of Law, the Court now makes its formal Findings of Fact, Conclusions of Law and Order thereon.

## FINDINGS OF FACT

1. That on the 22nd day of September, 1967, Richard A. Carlson, the hereinabove named Bankrupt, filed a Voluntary Petition in Bankruptcy in the United States District Court for the Central District of California, and the said matter was referred to A. K. Phelps, Referee in Bankruptcy, for the purposes of administration.

2. That on the 22nd day of September, 1967, the date of the filing of the said Voluntary Petition, the Bankrupt, Richard A. Carlson, was indebted to the Board of Equalization of the State of California in the amount of $14,609.13 under the Sales and Use Tax law of the State of California. That said liability arose more than three years prior to September 22, 1967, and said liability on September 22, 1967, was secured by liens recorded in the Office of the County Recorder of Orange and Los Angeles, which tax liens but for the effect of the Bankruptcy Act would remain in full force and effect.

3. That although Richard A. Carlson, the Bankrupt, held assets on September 22, 1967, such assets were insufficient to pay the aforesaid tax liability in full and, accordingly, it would be necessary for the said State Board of Equalization in ordinary circumstances to look to assets acquired after September 22, 1967, in order to collect the liability as set forth hereinabove, but for the intervention of the said bankruptcy filed as set forth above.

The following Conclusions of Law insofar as they may be considered Findings of Fact are also found by the Court to be true in all respects. From the foregoing facts, the Court concludes that:

## CONCLUSIONS OF LAW

### I

That the aforesaid tax liability of Richard A. Carlson, the Bankrupt hereinabove named, owing under the Sales and Use Tax of the State of California is a debt which is dischargeable under the provisions of Section 17 of the Act of Congress Relating to Bankruptcy.

### II

Any Conclusions of Law contained in the Findings of Fact are deemed incorporated herein by reference.

### ORDER

By reason of the foregoing Decision, Findings of Fact and Conclusions of Law, it is hereby ordered that the afore-said tax liability of Richard A. Carlson under the Sales and Use Tax of the State of California is dischargeable under the provisions of Section 17 of the Act of Congress Relating to Bankruptcy.

It is further ordered that the Bankrupt having received his discharge in bankruptcy, the State Board of Equalization, its agents, servants and employees and any person seeking to act for and on behalf of the State Board of Equalization be, and each of them are, hereby permanently restrained and enjoined from taking any action to collect said tax.

It is further ordered that the Order of A. K. Phelps, Referee in Bankruptcy, which found that the said tax liability is dischargeable under the provisions of Section 17 of the Act of Congress Relating to Bankruptcy, and the said Order which restrained and enjoined the State Board of Equalization, its agents, servants and employees, and any person seeking to act for and on behalf of the State Board of Equalization as being permanently restrained and enjoined from collecting said tax be, and the same is hereby reaffirmed.