**In the Matter of Carolyn June WUKELIC, Bankrupt.**

**No. 58,992.**

United States District Court, S. D. Ohio, E. D.

May 5, 1975.

Gene W. Thompson, Columbus, Ohio, for bankrupt.

Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., William W. Milligan, U. S. Atty., W. Robinson Watters, Asst. U. S. Atty., Columbus, Ohio, for respondent.

OPINION AND ORDER

DUNCAN, District Judge.

The United States has appealed to this Court for a review of the Order of the Honorable John J. Dilenschneider, Bankruptcy Judge, entered January 4, 1974, granting a discharge of certain claims of the United States for income taxes. Since the facts of this case have been fully set out in the order of the Bankruptcy Judge only a brief summary need be stated here.

The bankrupt, Carolyn June Wukelic, was previously married to Dr. Richard Haley, with whom she filed a joint tax re-

turn in April, 1969. The return indicated that all but a small part of the family income was attributable to Dr. Haley's work as a physician. In addition to certain personal itemized deductions, the return listed business deductions arising from Dr. Haley's medical work, a twenty thousand dollar ($20,000.00) loss from the operation of a farm owned by Haley, and a depreciation on his Cessna airplane. These deductions were subsequently disputed by the Internal Revenue Service (hereinafter "IRS"); because of administrative review the IRS did not make a deficiency assessment until June 8, 1973. Mrs. Wukelic was divorced from Dr. Haley in 1970 and has since remarried. In December, 1972, she filed a Petition in Bankruptcy and an Application to Determine Dischargeability of Taxes. It is the Bankruptcy Judge's order upon this Application which is the subject of this appeal.

Two basic questions are raised by the government's appeal. The first question on appeal is whether the Bankruptcy Court was correct in discharging the taxes arising from the disallowance of the deductions pursuant to Section 17a(1) of the Bankruptcy Act, 11 U.S.C. § 35(a)(1). The resolution of this question is dependent upon an interpretation of § 17a, which reads in pertinent part:

A discharge in bankruptcy shall release a bankrupt from all his provable debts, whether allowable in full or in part, except such as (1) are taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof within three years preceding bankruptcy: *Provided, however,* that a discharge in bankruptcy shall not release a bankrupt from any taxes . . . (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt, . . .

Generally this section allows the dischargeability of liability for taxes due and owing for a period of more than three years at the time the bankruptcy petition is filed. It does, however, state five exceptions to this general rule, which operate to bar the discharge of a bankrupt's tax liability. The third of these exceptions, set out above, provides the basis for the claim of the United States that the Bankruptcy Judge erred in allowing a discharge for Mrs. Wukelic's tax debt.

Since it is conceded that the taxes in question were due and owing more than three years at the time the petition in bankruptcy was filed and since it is also undisputed that no assessment was made prior to bankruptcy because administrative remedies were being pursued by Dr. Haley, the issue may be narrowed to a determination of the words "taxes . . . not reported on a return" in the proviso. Briefly stated, the bankrupt-appellee contends, and it was so held by Judge Dilenschneider, that she had "reported" her taxes when she completely stated all her gross income and the basis for the deductions claimed. The United States argues, however, that because the actual tax liability was not properly stated, the bankrupt did not, in fact, "report" her taxes within the meaning of the § 17a(1)(c) proviso.

Judicial interpretation of these words has been limited and divided. Equally scarce is any significant legislative history that would be of help in deciding the interpretation to be given these words. As the United States Court of Appeals for Fifth Circuit commented:

From all we have been able to discover, the specific proviso which controls the case at bar just never received direct public congressional attention or explication.

*In re Indian Lake Estates, Inc.,* 428 F.2d 319, 323 (5th Cir. 1970), *cert. denied* 400 U.S. 964, 91 S.Ct. 366, 27

L.Ed.2d 383 (1970). In that case the Fifth Circuit proceeded to conclude that the taxes were not dischargeable. The Court stated:

> It is obvious that the assessment was for the difference between the amount shown by the taxpayer on its return and the amount calculated as correct by the Director. It is equally transparent that it was therefore an assessment for an amount of taxes not reported on a return made by a bankrupt.

*In re Indian Lake Estates, Inc., supra,* at 324. Contrary to the case at bar *In re Indian Lake Estates, Inc.* dealt with a corporate debtor.

The United States Court of Appeals for the Third Circuit came to a similar conclusion regarding non-dischargeability of an individual debtor's taxes by applying the common rule of statutory construction that words are presumed to be used in "their ordinary and usual sense, and with the meaning commonly attributable to them." *In re Michaud,* 458 F.2d 953, 957 (3d Cir.) *cert. denied* 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972) (citations omitted). Finding that a dictionary defined "report" as: "to give a formal or official account or statement of; state formally," the Third Circuit concluded that as used by Congress "report" connoted a formal presentation of the tax liability rather than an informal presentation of information which gave rise to the liability. With all due respect to the Third Circuit, I feel compelled to agree with the Bankruptcy Judge herein that neither the rationale nor the result of *Michaud* is persuasive when applied to the particular facts of this no-asset case. The rationale of *Michaud* ignores the fundamental purpose behind the Bankruptcy Act: the effective rehabilitation of the individual bankrupt. Because of this purpose, its provisions are remedial in nature and as such should be construed liberally; conversely, exceptions to its remedial provisions should be construed narrowly. See *In re Michaud,* 317 F.

Supp. 1002 (W.D.Pa.1970) *reversed on other grounds* 458 F.2d 953 (3d Cir. 1972), and cases cited therein. The government's position would not only emasculate the remedial nature of the Bankruptcy Act but would make it contingent upon the intricacies of the tax law as to whether certain claimed deductions were allowed or disallowed by the IRS. Moreover, as one noted commentator has observed, such an interpretation of proviso would produce some ironic results:

> It is anomalous to say that under proviso (b) a taxpayer-bankrupt may be released from tax liability arising from the failure of the bankrupt to make a return required by law where the taxes became legally due and owing more than three years before bankruptcy and were assessed more than one year before filing of the petition, and to interpret proviso (c) in such a way that a deficiency arising from a return made by a bankrupt in which there was full disclosure, will not be released, although the taxes became legally due and owing more than three years before bankruptcy.

Seligson, "Some Observations on the 1966 Tax Amendments," 45 Am.Bankr. L.J. 281, 300 (1971).

Such an interpretation would also be anomalous in light of the extensive judicial construction given the parallel three year period of the Internal Revenue Code, 26 U.S.C. § 6501. This section sets, with certain specified exceptions, a three year period within which an assessment of a tax must be made. It is well settled that for purposes of that section full disclosure of information giving rise to liability is sufficient to trigger the three year period notwithstanding that the government may subsequently determine the liability to be otherwise than is stated. The government is given an extended period only where the taxpayer has failed to include gross income on his return. Without a clear congressional mandate to the contrary, it is difficult for me to conclude that Congress intended the three

year period of proviso (c) to be construed differently.[1]

■ The second question concerns the effect of a tax lien filed by the government prior to the application for bankruptcy. The government contests that part of the Bankruptcy Judge's order which provided

> that any liens taken by Internal Revenue Service on property owned by Mrs. Wukelic before bankruptcy are good and subsisting liens, but that no liens on 1968 tax liability shall attach to property acquired by Mrs. Wukelic after the date of her bankruptcy.

Section 17a(1) of the Bankruptcy Act specifically provides "that a discharge in bankruptcy shall not release or affect any tax lien." 11 U.S.C. § 35(a). There is no dispute that the government has a valid existing tax lien; there is also no dispute that this lien attaches to property held by Mrs. Wukelic at the time she filed for bankruptcy. The only question is whether the lien may attach to property acquired *after* bankruptcy. In support of its contention that the lien should attach to property acquired subsequent to bankruptcy, the government cites *Glass* v. *City Bank of Jeanette, Pennsylvania* v. *United States, 326* U.S. 265, 66 S.Ct. 108, 90 L.Ed. 56 (1945). In *Glass* the Supreme Court held that a tax lien could cover property acquired after the lien arose. The Court, however, was not considering in *Glass* a situation in which the lien attached to property acquired after *bankruptcy* but solely to property acquired after the lien itself was created. Moreover, *Glass* was decided prior to the 1966 amendment to § 17a(1) which for the first time permitted certain classes of taxes to become dischargeable; prior to this, bankruptcy did not release a debt "due as a tax levied by the United

States . . . " For these reasons it appears to this Court that *Glass* is not applicable to the case at bar. Courts which have considered the precise question involved herein have found that liens arising from taxes discharged in bankruptcy remain effective only upon property held as of the date of bankruptcy. See *United States* v. *Sanabria,* 424 F.2d 1121 (7th Cir. 1970); *In re Carlson,* 292 F.Supp. 778 (C.D.Cal.1968); *In re Braund,* 289 F.Supp. 604 (C.D. Cal.1968), *aff'd* 423 F.2d 718 (9th Cir. 1970).

The Court in *In re Carlson* undertook an extensive analysis of the legislative history behind this proviso of § 17a(1); it then concluded that

> the quotations above from the Committee Reports make it plain that the purpose of the Congress, in amending Section 17, sub. a(1), was to enhance the individual's opportunity to financially rehabilitate himself in bankruptcy, by eliminating his old tax debts. Unfortunately, if the [government's] view is accepted, that purpose can and will be entirely frustrated . . . .

*In re Carlson, supra,* at 783. Although, concededly, there are substantial arguments on both sides, I conclude that the intent of Congress and the purpose of the Bankruptcy Act will be better served by holding that tax liens may only attach to property existing at the time of bankruptcy and not to after-acquired assets. See Senate Report No. 1158, 89th Cong. 1st Sess. 2, 3 (1966), U.S.Code Cong. & Admin.News 1966, p. 2468.

For the reasons set forth in the opinion of the Bankruptcy Court and those set forth hereinabove, the Order of the Bankruptcy Court entered January 4, 1974, is hereby affirmed.

It is so ordered.

---

1. In light of the decision on the issue of dischargeability it is not necessary for me to consider the government's request that this Court determine the legality and the amount of the additional tax deficiency.