**In the Matter of Abner MICHAUD and Alyce E. Michaud, Bankrupts.**

**No. 65–126 Erie.**

United States District Court,
W. D. Pennsylvania.

Oct. 1, 1970.

Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., Kenneth A. Lazarus, Trial Atty., Dept. of Justice, Washington, D. C., for U. S.

John V. Bowser, Pittsburgh, Pa., for trustee.

Warren W. Bentz, Erie, Pa., George P. Walker, and Robert M. Taylor, Philadelphia, Pa., for bankrupts.

## OPINION

GERALD J. WEBER, District Judge.

This matter comes before the court on the Petition of the United States for Review of the Order of the Hon. William B. Washabaugh, Jr., Referee in Bankruptcy, entered October 10, 1969 granting a discharge to the Bankrupt and thereby denying priority treatment to certain claims of the United States for income taxes. Other matters raised by the Petition for Review are largely dependent upon the determination of the dischargeability issue.

For over 20 years the Bankrupt [1] conducted a meat processing and distributing business and filed income tax returns showing all gross income and claiming as a business deduction 3% of gross sales as a "sales promotion expense" represented by payments to managers, chefs, purchasing agents and other customer representatives, all generally known as "kickbacks". These returns were examined annually, the deduction was not questioned by the Internal Revenue Service, and the practice was known by the I.R.S. as almost universal throughout the industry. In 1958 the I.R.S. instituted a policy of questioning these deductions and checked the returns of persons engaged in this business on a nationwide scale.

The deductions were disallowed and then a formula was adopted for compromising the disallowed "kickback" deductions; 50% of the claimed deduction would be allowed where the payments were "substantiated" (i. e. where the recipient of the payment was identified), and 25% would be allowed where the payment was "unsubstantiated" (i. e. on sufficient proof of payment but no identification of the recipient). An obvious purpose of the I.R.S. policy was to enforce income tax reporting by recipients. As a result of the 1958 policy, Bankrupt's returns were audited and the claimed deductions were disallowed for the years 1955, 1956 and 1957. A notice of proposed deficiency (the 90 day letter) was sent, the taxpayer petitioned the Tax Court within this time, thus preventing the assessment of the deficiency within the three years prior to the bankruptcy, a condition imposed by Sec. 17a

---

1. The term "bankrupt" used herein refers to both Mr. and Mrs. Michaud. There are actually two bankrupts and two cases. Abner Michaud and Alyce Michaud are husband and wife who filed separate bankruptcy petitions. They filed joint individual income tax returns. The claimed tax deficiency here involved arose from disputed business expense deductions on a partnership income tax return of husband's business.

(1) (c) of the Bankruptcy Act for denial of discharge. The case was at issue and never tried before the filing of the bankruptcy petition.

It may be noted that for the years in question the business was conducted as a partnership, with Bankrupt owning a 95% interest, and the claimed deductions were reported on the partnership income tax return. Bankrupt reported all income from the partnership on his individual tax return.

The 1966 amendments to the Bankruptcy Act in Sec. 17a(1) [11 U.S.C. § 35a(1)] made taxes dischargeable which became legally due and owing more than 3 years preceding the bankruptcy, except those taxes * * *

"(c) which were not reported on a return made by the bankrupt(s) and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies. * * * * "

■ No assessment of the deficiency was made in this case within 3 years prior to bankruptcy because administrative and judicial remedies were pending. Despite the possibility of a jeopardy assessment, we will consider the second requirement of Sec. 17a(1) (c) as met.

Our problem is whether the taxes in question were "taxes * * * which were not reported on a return made by the bankrupt", when the gross income of the bankrupt was reported and the basis and amount of the claimed business expense deductions was fully set forth, and the resultant taxable income after taking such deductions was correctly computed, but when the Commissioner disallowed certain claimed business expense deductions and sent the taxpayers a 90 days notice of a proposed deficiency the determination of which was still pending at the time of the filing of the bankruptcy petition.

There is an extreme scarcity of judicial interpretation of the meaning of the provision "taxes * * * not reported on a return". Only one case has dealt with the problem in a factual context similar to this case, a decision which was issued subsequent to the Memorandum and Order of the Referee in the present case: Indian Lakes Estates, Inc. v. Stewart, Trustee, 428 F.2d 319 [5th Cir., 1970].

There the Court faced the same problem as here:

"We are not presented with a situation where the taxpayer filed a fraudulent or evasive return. It appears that the reason for the assessment arose because of a difference of opinion in the resultant tax liability properly attributable to a non-fraudulent return. It is obvious that the assessment was for the difference between the amount shown by the taxpayer on its return and the amount calculated as correct by the Director."

(p. 324)

and also

"No issue is presented as to any failure to file a return or as to filing of a false or fraudulent return or as to any attempt to evade or defeat taxes. The taxes here involved were not collected or withheld from others."

(p. 322)

The Court of Appeals for the Fifth Circuit had a difficult time with the question. It sought guidance from the legislative history as to the meaning of the specific phraseology.

"From all we have been able to discover, the specific proviso which controls the case at bar just never received direct public congressional attention of explication."

(p. 323)

However, the court did find that the Senate Committee on the Judiciary declared the fundamental policy of the Bankruptcy Act to be twofold: (1) the effective rehabilitation of the bankrupt, and (2) the equitable distribution of the bankrupt's assets among the creditors, citing Sen. Report 1158, 89th Congress, 2nd Sess. [1966].

The Court then considered that,

"Effective rehabilitation was pointedly intended to provide relief for *individual* bankrupts. (emphasis by the court). A contrast was drawn between corporate bankrupts who carried no practical burden even when saddled with enormous after-bankruptcy tax liabilities, since their artificial entity could be dissolved. Natural persons, on the other hand, who went into bankruptcy with large tax debts remained burdened with such debts and their intended and desired rehabilitation was inequitably hindered."

(p. 322)

The court in *Indian Lakes Estates* was dealing with a corporate debtor where the dischargeability feature was meaningless and only the decision on priority had any practical effect,

In *Indian Lakes Estates* the court cited the only judicial interpretation of the 1966 Bankruptcy Act amendments available, In re Cohen, 21 AFTR 2d 992 [1967], a decision of the referee in bankruptcy for the Northern District of Georgia. *Cohen* was different on its facts and represented a peculiar situation. While hard cases are blamed for making bad law, easy cases set difficult precedents. In *Cohen* a voluntary petition was filed February 13, 1967. It listed no debts, secured or unsecured, other than taxes due the United States for the year 1958, the determination of which were then pending in the United States Tax Court. Upon the filing of the bankruptcy petition the usual order of temporary restraint was issued. It required creditors holding claims which they contended would not be discharged by the bankruptcy and upon which they wished to pursue further remedies of collection to file application to the bankruptcy court. The United States made such application on April 11, 1967, reciting that the bankrupt had filed his petition in the United States Tax Court on March 25, 1965, asking for a redetermination of the deficiency proposed by the I.R.S. and that the Tax Court had decided the question of liability in favor of the United States on March 25, 1967. It is interesting to note that the decision of the Tax Court was made pursuant to a stipulation entered into between bankrupt and the I.R.S. in which the full amount of the proposed deficiency was conceded. From this we assume that the bankrupt was aware of the eventual determination of his liability at the time of filing his bankruptcy petition. Thus having secured a determination in the Tax Court free of any showing of fraud, and arguing that discharges are favored by the bankruptcy law to relieve unfortunate debtors, he sought relief from this tax obligation through the voluntary bankruptcy proceeding. While ordinarily this defense would be one properly raised in the proceedings employed to enforce the particular liability, for reasons of convenience and efficient judicial administration, and by the prayer of both parties for determination, the bankruptcy court undertook to determine the dischargeability of this particular and only obligation of the bankrupt. The opinion of the referee recites the evidence before the Tax Court showing large items of gross income not disclosed on the return and the referee found as a fact that the taxes claimed by the I.R.S. in its notice of deficiency were not reported on a return made by the bankrupt, the exact condition which the statute prescribes. Under any interpretation of Sec. 17(a) (1) (c) the exception must apply. The referee's further conclusion that "taxes" mean tax liability is dictum and not necessary to his disposition of the case. Actually, the referee's dictum was addressed to the bankrupt's defense that he had reported all tax information to his tax consultant who had prepared the return, a defense which the referee characterized as "untenable". While the referee's opinion does not refer to it, there is a suggestion from the entire record of the case as recited by the referee that if the issue were pressed by the government, tax liability might not be dischargeable under Sec. 17a(1) (d), as a wilful attempt to evade.

■ Under the analogy between the three year statute of the Internal Revenue Code, 26 U.S.C. § 6501(a) and (e), and the parallel three year limitation for tax liability in Sec. 17a(1) of the Bankruptcy Act, 11 U.S.C. § 35(a), recited by Senator Ervin (Report of Senate Judiciary Committee, No. 1158, p. 3), if tax liability is not disclosed by inclusion of income in the return there is no bar of the statute of limitations under the Internal Revenue Code and there should be consequently no discharge in bankruptcy. *Cohen* was a voluntary petition. There being no other creditors there was no problem of equitable distribution of assets. Upon disallowance of the discharge by the referee the bankrupt moved to dismiss his petition in bankruptcy, to which the Internal Revenue Service had no objection.

Therefore neither *Indian Lake Estates* nor *Cohen* present a fundamental conflict with the paramount policy of the Bankruptcy Act, the effective rehabilitation of the bankrupt and the equitable distribution of the assets.

We have recited the parallel provisions of the 3 year statutes of limitations of the Internal Revenue Code. There is a wealth of judicial construction on Sec. 6501 of the Internal Revenue Code to the effect that full disclosure of the liabilities in question on the return is sufficient to keep them within the statute of limitations notwithstanding that the tax computation is on another basis than the determination of the government. Colony, Inc. v. Commissioner of Internal Revenue, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 [1958]; Davis v. Hightower, 230 F.2d 549 [5th Cir., 1956]; Deakman-Wells Co., Inc. v. C. I. R., 213 F.2d 894 [3rd Cir., 1954]; Uptegrove Lumber Co. v. C. I. R., 204 F.2d 570 [3rd Cir., 1953] all recite the manifest purpose of Congress to limit the government to those cases where the taxpayer failed to include the income under the gross income on his return.

The facts upon which tax liability was computed by the bankrupt in this case was disclosed in the bankrupt's informa-tional partnership return. His own individual return correctly stated the income from his partnership interest. In Germantown Trust Co. v. Commissioner of Internal Revenue, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 [1940] where the government contended that there was no bar of the statute of limitations because no corporation return was filed (Form 1120) as required for the investment trust operation which the taxpayer conducted, the taxpayer showed that it had filed a fiduciary return (Form 1041) disclosing all the income of the trust and the names of the parties to whom the distributive shares of income had been paid. The Court rejected the government's argument:

"It cannot be said that the petitioner, whether treated as a corporation or not, made no return of the tax imposed by the statute. Its return may have been incomplete in that it failed to compute a tax, but this defect falls short of rendering no return whatsoever." (p. 310, 60 S.Ct. p. 569)

Another aspect of the government's contention impresses us. The entire remedial effect of the 1966 Amendment to the Act can be nullified in any case where there is a difference of opinion between the I.R.S. and the taxpayer over the claimed deductions. Wherever the taxpayer elects to pursue his administrative or judicial remedies the three year statutory period prior to bankruptcy can never start to run unless the taxpayer withdraws his objections to the government's proposed determination and agrees to the tax liabilities in the manner computed by the government so that an assessment could be made.

To give this practical application it means that a taxpayer can only disagree with the I.R.S. under the very likely unforeseen penalty of refusal of a discharge in bankruptcy if the dispute is unresolved by administrative or judicial remedies pending three years prior to his petition in bankruptcy. In the parlance of the gambling fraternity I believe that such a practice is generally described as "sandbagging", which Webster more po-

litely described as "to coerce by crude means". (Webster's Seventh New Collegiate Dictionary).

The rationale of the Internal Revenue Code statute of limitations cases is applicable here:

> "The only way in which the taxpayer here could satisfy the government's requirement that he state his 'gross income' in a way to permit a tax computation of the amount the government claims is due, would be for him to abandon his claim that he was entitled to capital gains treatment of the sales in question. No such penalty was intended by Congress in extending the statutory period to 5 years in case of substantial omission." Davis v. Hightower, cit. supra, 230 F.2d. p. 553;

and

> "For there are many places throughout an income tax return where a taxpayer may make arithmetical errors or claim improper deductions with the result that his tax liability is understated. If such errors are made in good faith at any place other than the gross income section, it is clear that the government must challenge them, if at all, within the normal three year limitation period." Uptegrove Lumber Co. v. C. I. R., cit. supra, 204 F.2d p. 573.

*Indian Lakes Estates*, supra, also found support in 1 Collier on Bankruptcy, 14th ed., Sec. 17.14(4), p. 1620, where we find the following:

> "First of all, the exception (Sec. 17a (1) (c) relates to taxes due more than three years before bankruptcy 'which were not reported on a return'. This language *should* mean where the tax liability was not reported as distinguished from the information giving rise to the liability." (emphasis supplied).

Collier cites no authority and gives no argument to support this construction, but then goes on to note that "The exception in (c) is not as clear as possible.", (p. 1621) then proceeding to discuss at length the second proviso of sub-section (c) relating to the time of assessment. Collier seems to take the position that anything which bars the government from obtaining its permanent non-dischargeable lien prior to the three year period prior to bankruptcy makes the tax obligation non-dischargeable.

A reference was made in *Indian Lakes Estates*, supra, to the article of William T. Plumb, Jr., "Federal Tax Liens and Priorities in Bankruptcy—Recent Developments" in Journal of the National Conference of Referees in Bankruptcy, Vol. 43, No. 2, p. 44, where footnote 110 states:

> "It is immaterial that full disclosure of relevant information is made in the return, if the amount of *tax liability* (emphasis in original) is understated."

Plumb cites In re Cohen, supra, for this statement, although *Cohen* was a case of failure to disclose income. The only text writer who rises to the status of a prophet is Frank R. Kennedy in "The Bankruptcy Amendments of 1966", 1 Georgia Law Review 149, who correctly guesses:

> "Counsel for the Government undoubtedly will view the taking of an improper deduction on a duly filed income tax return as well as the failure to include any taxable income as an instance of an unreported tax."
>
> (p. 177)

We find the government's contention to be in direct opposition to the manifest purpose of the Bankruptcy Act. This was apparent to the Court of Appeals in *Indian Lakes Estates*, supra:

> "We are well aware that this construction does not accord with every broad intention announced by the Congress."
>
> (428 F.2d p. 324)

But the court there was dealing with a corporate bankrupt where the only practical problem was an equitable distribution of assets rather than the rehabilitation of the debtor. The court was not required to consider the remedial purposes of the statute.

Statutes which are intended to be remedial in nature should be liberally construed. Sablowsky v. United States, 101 F.2d 183 [3rd Cir., 1938]. Exceptions to a statute which is remedial in purpose must be strictly construed. Korherr v. Bumb, 262 F.2d 157 [9th Cir., 1958].

■■■■■ We come to the following conclusions:

(1) The fundamental policy of the Bankruptcy Act was aimed at the effective rehabilitation of individual bankrupts.

(2) Statutory provisions regulating discharges are remedial in their nature. They should be construed liberally with the purpose of carrying into effect their legislative intent. 1 Collier on Bankruptcy 1262.

(3) The meaning of the statutory provision is doubtful and this entitles the court to consider the fundamental policy of the statute.

(4) Discharge from liability is an essential element of effective rehabilitation for individual bankrupts. It is meaningless for corporate bankrupts.

(5) The three year statute of limitations on assessments in the Internal Revenue Code and the three year period for non-dischargeable tax liabilities in the Bankruptcy Act are in *pari materia* and their meaning should be given a uniform construction.

(6) The cases construing the statute of limitations under the Internal Revenue Code uniformly sustain the bar of the statute when, the taxpayer has disclosed fully on his return the information from which the tax liability can be determined.

(7) The bankrupt filed a tax return in which all of his gross income was disclosed and the nature and amount of his claimed deductions were specified.

(8) The denial of a discharge to the bankrupt in this case is contrary to the fundamental purposes of the Bankruptcy Act and contrary to the legislative intent of the remedial provisions limiting tax liability.

(9) The bankrupt did not fail to report taxes on a return under the provisions of Sec. 17a(1) (c) of the Bankruptcy Act.

## THE AFTER-ACQUIRED PROPERTY ISSUE

The Government objects to Order No. 3 of the Referee discharging bankrupts "from any and every liability in respect to said taxes and interest and penalties thereon.", by attacking the jurisdiction of the Referee to preclude additional recovery against after-acquired property. The question need not be decided here in view of our determination that liabilities for the taxes are discharged. However, the question has been decided by a number of district courts and affirmed by courts of appeal that liens which arose from taxes which are discharged in bankruptcy under Sec. 17(a) as amended in 1966 remain effective only upon assets existing as of the date of the bankruptcy. United States v. Sanabria, 424 F.2d 1121 [7th Cir., 1970] affirming United States District Court, N.D.Ill. E.Div.; In re Braund, 423 F.2d 718 [9th Cir., 1970] affirming 289 F.Supp. 604 [C.D.Cal.1969]; In re Carlson, 423 F.2d 714 [9th Cir., 1970], affirming 292 F. Supp. 778 [C.D.Cal.1969].

See also Kennedy, Op. cit. supra, p. 179, and Plumb, Op. cit. supra, pp. 44, 45.

We also note from the district courts' reported opinions in In re Carlson and In re Braund that the matters arose in both cases from proceedings before referees in bankruptcy.

The identical objection to jurisdiction was raised in In re Braund before the district court. The district court found jurisdiction under Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L. Ed. 1230 [1934] where it was held that

the exercise of such jurisdiction is necessary to achieve the essential purpose of the Bankruptcy Act, a fresh start. See also Kennedy, Op. cit. supra, p. 179.

The rationale of all of the above cited cases is that statutes must be construed to carry out their legislative purpose and that it is plain that in amending Sec. 17 of the Bankruptcy Act the purpose of Congress was to enhance the individuals opportunity to financially rehabilitate himself in bankruptcy, by eliminating his old tax debts.

## THE DETERMINATION OF TAX LIABILITY

 By stipulation of the parties the Referee was to determine the substantive tax question in this case arising from the I.R.S. disallowance of the "kickback" deductions. The Referee decided this issue in favor of the government. The record supports the Referee's findings. The bankrupt failed to produce such evidence as would satisfy the requirement of substantiation of the major portion of these payments, either from his own business records, or corroborating evidence of the identity of the recipients.

As to those payments for which evidence of substantiation was presented, the bankrupt failed to carry his burden of proof as to the knowledge of the employers of the recipients, or custom of the industry, as was shown in Conway Import Co. v. United States, 311 F.Supp. 5 [E.D.N.Y.1969]. Therefore, the Referee's determination that such payments were in contravention of public policy is supported by the record in this case.

## COMPUTATION

 The Referee allowed the claim of the United States in the sum of $94,652.-73 plus applicable interest to the filing date of the Arrangement petition and the amount due for the year 1960 on taxable income not in excess of $44,000 and said interest. This was allowed as a general claim. The Government now disputes this amount and claims $97,172.26 plus

interest. The principal difference is largely based upon the Referee's determination that no "restricted interest" was due for the 1958–1961 period under the provisions of Sec. 6611(f) of the I.R.C. The Referee's computation of the amount was pursuant to the Government's Exhibit A and the testimony and stipulation in the record. We cannot find the Referee's determination clearly erroneous. The counsel for the Government recognizing that there was approximately $75,000 available for distribution, far less than the Government's claim, did not press this point of argument.

## ORDER

And now, October 1, 1970, after consideration of the Petition for Review in the within cases, it is

Ordered that the Referee's Order of October 10, 1969, as thereafter amended, is hereby affirmed for the reasons stated in the foregoing Opinion.