In the Matter of Abner **MICHAUD** and Alyce E. Michaud, Bankrupts.

Appeal of **UNITED STATES** of America.
No. 71-1165.

United States Court of Appeals,
Third Circuit.

Argued Jan. 24, 1972.

Decided April 10, 1972.

Richard Perkins, Dept. of Justice, Tax Div., Washington, D. C., for appellant.

George P. Walker, Philadelphia, Pa., for appellee, trustee.

Warren W. Bentz, Erie, Pa., for appellee, bankrupt.

Before BIGGS and VAN DUSEN, Circuit Judges, and GREEN, District Judge.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The United States has appealed from a district court order[1] which affirmed the order of a referee in bankruptcy denying priority status to the income tax claims of the United States. The primary issue to be resolved on this appeal is whether the district court was correct

---

1. In re Michaud, 317 F.Supp. 1002 (W.D.Pa.1970).

in concluding that Section 17a(1) (c) of the Bankruptcy Act, 11 U.S.C. § 35(a) (1) (c), operates to release Abner Michaud and Alyce E. Michaud from their federal income tax deficiencies for the years 1955, 1956, 1957, 1958 and 1960, with the result that under the terms of Section 64a(4) of the Bankruptcy Act, 11 U.S.C. § 104(a) (4),[2] the United States is not entitled to a priority over general unsecured creditors with respect to these tax deficiencies. We have concluded that the district court was incorrect in its interpretation of Section 17a(1) (c) and reverse the district court order.

Section 17a(1) of the Bankruptcy Act, 11 U.S.C. § 35(a) (1), as amended in 1966, provides, in relevant part, as follows:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts . . . except such as (1) are taxes which became legally due and owing by the bankrupt to the United States . . . within three years preceding bankruptcy: *Provided, however,* That a discharge in bankruptcy shall not release a bankrupt from any taxes . . . (c) which were not reported on a return made by the bankrupt and which were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of administrative or judicial remedies available to the bankrupt . . . ."

The United States concedes that the taxes at issue (i. e., income taxes of the bankrupts for the years 1955–1958 and 1960) became legally due and owing more than three years preceding bankruptcy[3] (appellant's brief at 10, n. 11); thus, the Government's income tax claims for these years would be released by the Michaud's discharges in bankruptcy[4] under the terms of Section 17a(1), unless the above-quoted subsection (c) preserves them.[5] Further, the trustee (the appellee in this action) concedes that the second condition listed in Section 17a(1) (c) has been satisfied, that is that the taxes at issue were not assessed prior to bankruptcy by reason of a prohibition on assessment pending the exhaustion of the bankrupts' administrative and judicial remedies.[6] (appel-

2. Section 64a(4) of the Bankruptcy Act provides in relevant part as follows:
   "*Debts which have priority*—a. The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be . . . (4) taxes which became legally due and owing by the bankrupt to the United States or to any State or any subdivision thereof which are not released by a discharge in bankruptcy: *Provided, however,* That no priority over general unsecured claims shall pertain to taxes not included in the foregoing priority: . . . ."

3. Abner Michaud petitioned for an arrangement under Chapter XI of the Bankruptcy Act on December 2, 1965, and on May 4, 1966, his wife, Alyce E. Michaud, filed a Petition in Bankruptcy. The United States concedes that the taxes here in question were "due and owing" at the due date of the returns for each of the years 1955–1958 and 1960. Appellant's brief at 10, n. 11. *See* In re Able Roofing and Sheet Metal Co., 425 F.2d 699 (5th Cir. 1970).

4. On April 19, 1967, both Abner Michaud and Alyce E. Michaud were granted discharges under the Bankruptcy Act, except as to "such debts as are, by said Act, excepted from the operation of a discharge in bankruptcy."

5. The United States has not argued that any of the other exceptions contained in Section 17a(1) apply to the income tax claims against the Michauds which are involved in this proceeding.

6. On May 6, 1963, the United States sent the Michauds a notice of deficiency pursuant to Section 6213 of the Internal Revenue Code. The Michauds filed timely petitions for redetermination of their liabilities in the United States Tax Court, which proceedings were pending at the times that the Michauds filed their respective petitions under the Bankruptcy Act on December 2, 1965, and May 4, 1966. Under the terms of Section 6213 of the Internal Revenue Code, the pendency of these Tax Court proceedings precluded the assessment of these taxes by the United States, except by jeopardy assessment pursuant to Section 6861.

lee's brief at 8). Thus the decision on this appeal turns on whether the first condition listed in subsection (c) has been satisfied, that is, whether the taxes at issue are "taxes . . . which were not reported on a return made by the bankrupt . . . ." within the meaning of Section 17a(1) (c) of the Bankruptcy Act.

During the period 1955–1960, Abner Michaud held a 95% interest in a partnership which conducted a meat processing and distributing business. In his tax returns for this period,[7] Michaud claimed as business deductions 3% of the partnership's gross sales, representing payments to the managers, chefs, purchasing agents and other customer representatives with whom the partnership dealt, which payments were characterized as "sales promotion expenses" by the bankrupts and as "kickbacks" by the United States. The United States has conceded that Michaud fully stated his income during this period, that the Internal Revenue Service was aware of the fact that kickbacks were paid to purchasers in the meat processing and distributing industry, and that the amount and character of these "sales promotion expenses" deductions taken by the Michauds were apparent from their returns (see the Referee's opinion at 3–4). On the other hand, the Referee and the district court have determined that these deductions were properly disallowed by the Government,[8] so that the income tax *liability* for which the United States claims priority was *not* stated in the returns filed by the Michauds.[9]

7. Partnership returns were filed on behalf of the partnership for its fiscal years ending March 31 of each year in question and the individual joint returns filed by the Michauds on a calendar year basis reflected the income attributable to Abner Michaud's interest in the partnership, as computed on the partnership returns. It appears that Alyce E. Michaud's liability to the United States arises from her signing of the Michauds' joint federal income tax returns during the years at issue.

8. On stipulation of the parties, the Referee determined the substantive issue of whether the United States had properly disallowed the "sales promotion expenses" deductions taken by the Michauds. The Referee found that all of these deductions were properly disallowed because the payments involved were "in violation and frustration of a clearly defined state and federal policy" and allowed the Government a general claim in the amount of $94,651.73, plus applicable interest to the date of filing of the arrangement petition on December 2, 1965, plus "the amount due for the year 1960 on taxable income not in excess of $44,000.00 and said interest." The district court sustained both the Referee's determination that the kickback payments were in contravention of public policy and the Referee's computation of the amount allowed. 117 F.Supp. at 1009. Since neither the Referee nor the district court has yet determined the exact amount of tax and interest due for the year 1960 (see page 17 of Referee's opinion at

113a), such a determination will apparently be necessary on remand. See Hugh H. Eby Co. v. United States, 456 F.2d 923 (3d Cir. 1972).

The trustee-appellee has argued before this court that the Referee and district court erred in disallowing the deductions taken by the Michaud partnership on public policy grounds. The trustee, however, did not cross-appeal from the district court's judgment, so that this court cannot upset a portion of the district court's judgment not challenged by the Government's appeal. *See* Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972) :

"In the absence of a cross appeal, the opposition is in no position to attack those portions of the District Court's judgment that are favorable to the plaintiff-appellants."

*See also* Jamesbury Corp. v. Worcester Valve Co., 443 F.2d 205, 208 n. 3 (1st Cir. 1971) ; United States of America, Inc. v. Fireman's Fund Ins. Co., 420 F.2d 337, 340 (8th Cir. 1970). We note also that the district court sustained the Referee's finding that the bankrupts failed to properly substantiate the major portion of the kickback payments, so that notwithstanding public policy considerations, the Michauds' income tax deficiency for the years 1955–1958 was found to be $72,500.00, plus interest (see 113a, 317 F.Supp. at 1009).

9. The tax claims for which the United States asserts priority are based upon deficiencies which were computed by sub-

The Referee and the district court held that in these circumstances the taxes at issue were not "taxes . . . which were not reported on a return made by the bankrupt" within the meaning of Section 17a(1) (c) of the Bankruptcy Act, so that these tax claims of the United States were released by the discharge in bankruptcy and were, therefore, not entitled to priority under the terms of Section 64a(4) of the Act. Noting that a fundamental purpose of the 1966 amendments to the Bankruptcy Act was to provide for the effective rehabilitation of the bankrupt by providing some time limit on the tax claims exempt from release after a discharge in bankruptcy,[10] the district court concluded that this purpose would be substantially frustrated if the Government's tax claim were not released in the circumstances of this case.[11] The district court further declared that Section 17a(1) (c) of the Bankruptcy Act and the three-year statute of limitations on assessments in Section 6501 of the Internal Revenue Code (26 U.S.C. § 6501) are in *pari materia* and appeared to reason that because the latter operates nor-

mally to preclude the Government from making an assessment more than three years after the return is filed if the taxpayer has included his full gross income on his return,[12] the former should be construed similarly so as to discharge a tax claim which arose more than three years before a discharge in bankruptcy, provided that—as is concededly the case with the Michauds—the bankrupt has stated his full gross income and indicated the nature of his unwarranted deductions in his return.

We reject this conclusion reached by the district court and conclude that the phrase "taxes . . . which were not reported on a return made by the bankrupt" as used in Section 17a(1) (c) of the Bankruptcy Act includes a tax deficiency ultimately established by the Government even if, as in the case of the Michauds, the taxpayer has fully reported both his gross income and the basis of the deductions which are ultimately disallowed. Although the matter is not free from doubt in view of the scant legislative history,[13] we believe that this interpre-

---

tracting the amount of the tax shown on the Michauds' returns from the tax liabilities determined by the Referee on the basis of the record, including stipulations, to be due. See footnote 8, *supra.*

10. Prior to the passage of the 1966 amendments to the Bankruptcy Act, a discharge in bankruptcy did not release the bankrupt from his federal, state, or local tax liabilities. See 11 U.S.C. § 35 (1964).

11. See footnote 17, *infra.*

12. Under Section 6501(e) (1) of the Internal Revenue Code, the three-year statute of limitations prescribed in Section 6501(a) applies unless the taxpayer "omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return," in which case assessment or collection procedures may be begun within six years after the filing of the return. Thus, if the taxpayer fully reports his income in his return but takes a deduction to which he is not entitled, the three-year limitations period applies; but if the same taxpayer omits from his return more than 25% of

the gross income stated in the return, the six-year limitation applies. (Exceptions to this rule are made in the cases of a fraudulent return, a willful attempt to evade tax, and a failure to file a return, in which case assessment or collection may be begun at any time pursuant to Section 6501(c) of the Internal Revenue Code. Analogous exceptions are contained in Section 17a(1) of the Bankruptcy Act, 11 U.S.C. § 35(a) (1).)

13. In In re Indian Lake Estates, Inc., 428 F.2d 319, 320 (5th Cir. 1970), the Fifth Circuit, in the only Circuit Court opinion construing Section 17a(1) (c) to which we have been referred, commented on its task as follows:

"This mortal court must attempt to divine the intent of Congress in a situation where that intent may well be known only to the Divine. We must say what Congress meant by two brief phrases in a technical proviso passage of an amendment to the dischargeable debt provisions of the bankruptcy laws when an exhaustive examination by counsel for both parties and this Court of the history of the legislative processes lead-

tation of Section 17a(1) (c) is the most reasonable construction of the language used by Congress and that the result which we reach is consistent with the purposes of this 1966 amendment to the Bankruptcy Act. The critical factor is that in Section 17a(1) (c) Congress has excepted from the general rule of Section 17a(1) "taxes . . . which were *not reported* on a return made by the bankrupt." (Emphasis added.) As the Supreme Court has indicated many times, "normally 'statutory words are presumed to be used in their ordinary and usual sense, and with the meaning commonly attributable to them.'" Colony, Inc. v. Comm'r, 357 U.S. 28, 32, 78 S.Ct. 1033, 1036, 2 L.Ed.2d 1119 (1958). See also Banks v. Chicago Grain Trimmers, 390 U.S. 459, 465, 88 S.Ct. 1140, 1144, 20 L.Ed.2d 30 (1968) ("In the absence of persuasive reasons to the contrary, we attribute to the words of a statute their ordinary meaning."). The verb "report" is defined in Webster's New International Dictionary (3d ed. 1961) as follows: "to give a formal or official account or statement of: state formally." "Report," in other words, connotes the *formal* representation of a

state of facts rather than the informal presentation which would be connoted by the terms "indicate," "include," etc. The fact that Congress employed the term "reported" in Section 17a(1) (c) demonstrates, therefore, that Congress intended to make the critical factor whether the taxes at issue were formally stated in the return.[14] Since it is conceded by the trustee that the tax liabilities at issue in this case were not stated on the Michauds' returns, it follows that under the terms of Section 17a(1) (c) these tax claims were not released by the Michauds' discharge in bankruptcy. There is no basis in this language for the distinction suggested by the district court between a tax liability which is not reported on the return because gross income has been understated and a tax liability which is not stated in the return because an unwarranted deduction has been taken. When Congress has intended to make such a distinction it has done so clearly, as in the case of the statute of limitations on the assessment and collection of income tax claims in Section 6501 of the Internal Revenue Code.[15] No such distinction

ing to this enactment fails to disclose that the meaning or the significance of the language critical to our decision, was ever really considered."

14. This interpretation of Section 17a(1) (c) is strengthened by the fact that Section 17a(1) (c) is phrased in terms of "taxes . . . which were not reported *on* a return made by the bankrupt," (emphasis added). See also the discussion of Colony, Inc. v. Comm'r, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958), in footnote 15, *infra*.

15. See footnote 12, *supra*. We cannot agree with the district court that the three-year statute of limitations on assessments in Section 6501 of the Internal Revenue Code and the three-year period for non-dischargeable tax liabilities in Section 17a(1) of the Bankruptcy Act are in *pari materia*, since the language used in the two sections is so substantially different. Similarly, we do not find the cases construing language in Section 6501(a)—Germantown Trust Co. v. Comm'r, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770 (1940) (construction of the

term "return" in the predecessor to Section 6501(a))—or in Section 6501(e)— Colony, Inc. v. Comm'r, 357 U.S. 28, 78 S.Ct. 1033, 2 L.Ed.2d 1119 (1958); Davis v. Hightower, 230 F.2d 549 (5th Cir. 1956); Deakman-Wells Co. v. Comm'r, 213 F.2d 894 (3d Cir. 1954); Uptegrove Lumber Co. v. Comm'r, 204 F.2d 570 (3d Cir. 1953)—support the district court's interpretation of the substantially different language in Section 17a (1) (c). We believe these cases, if anything, strengthen the interpretation which we give to Section 17a(1) (c). For example, in Colony, Inc. v. Comm'r, *supra*, the Court held that the phrase "omits from gross income an amount properly includible therein" in the predecessor to Section 6501(e) did not include an understatement of gross income resulting from a taxpayer's miscalculation of profits through the erroneous inclusion on the return of an excessive item of cost. The Court laid stress on the fact that the term "omit" was defined in Webster's New International Dictionary (2d ed. 1939) as "To leave out or unmentioned; not to insert, include, or name," whereas the

has been made in Section 17a(1) of the Bankruptcy Act.[16]

The construction which we give to Section 17a(1) (c) is not inconsistent with the intent of Congress in drafting the 1966 amendments to the Bankruptcy Act. As the district court noted, Congress clearly intended to stimulate the successful rehabilitation of the bankrupt by means of the release after bankruptcy of older tax liabilities. Although the district court assumed that its construction of Section 17a(1) (c) was most consistent with this purpose, it is not clear that this assumption is correct, at least in the long run.[17] Furthermore, as the

source of the error for which the Government asserted a tax deficiency was disclosed on the face of the return. 357 U.S. at 32–33, 36, 78 S.Ct. 1033. In the 1966 amendments to Section 17a of the Bankruptcy Act, however, Congress did not use the phrase "taxes . . . which were *omitted* from a return," which at least arguably under the *Colony, Inc.* decision would not have included the case where the taxpayer has indicated on the face of his return the basis of a subsequently disallowed deduction. Instead, Congress used the phrase "taxes . . . which were not *reported on* a return," which language, as indicated above, focuses attention on the formal indication of the tax liability in the bankrupt's tax return. See pages 957, *supra.*

16. We do not mean to imply that Congress has been crystal clear in drafting Section 17a(1) (c). The interpretation which we place on this language might have been clearer if, for example, Congress had provided that a discharge in bankruptcy shall not release a bankrupt from any taxes "(c) which do not appear designated as such on a return made by the bankrupt. . . ."

17. The district court emphasized that under the construction which we give to Section 17a(1) (c) a taxpayer who elects to pursue his administrative or judicial remedies to dispute the Government's disallowance of a deduction claimed in his return faces a risk that his tax liability for the period involved may not be released by a subsequent discharge in bankruptcy. See 317 F.Supp. at 1006–1007. This risk arises because Section 17a(1) (c) excepts from the general release rule taxes which were not assessed prior to bankruptcy because of a prohibition on assessment pending the exhaustion of the bankrupt's administrative and judicial remedies. Thus, if a taxpayer chooses to contest the Government's tax claim within the three-year period specified in Section 17a(1) (c) by proceedings which suspend the Government's authority to assess the tax, and if these proceedings have not terminated prior to the taxpayer's bankruptcy, then the Government's tax claim

is not released by the taxpayer's discharge in bankruptcy no matter how long after the taxes became due and owing the bankruptcy took place.

The construction of Section 17a(1) (c) adopted by the district court, however, could lead to an even more difficult situation for the taxpayer because of the authority granted to the Secretary of the Treasury in Section 6861 of the Internal Revenue Code. Section 6861(a) provides as follows:

"If the Secretary or his delegate believes that the assessment or collection of a deficiency . . . will be jeopardized by delay, he shall, notwithstanding the provisions of section 6213(a), immediately assess such deficiency (together with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary or his delegate for the payment thereof."

Thus, if the Secretary believes that the collection of federal taxes will be jeopardized by the taxpayer's exhaustion of administrative or judicial remedies before normal assessment may be made (as, for example, in those cases where the taxpayer's bankruptcy is likely), he may feel required to make a jeopardy assessment within three years after the taxes were due and owing to avoid a release pursuant to Section 17a(1) (c). *See* Plumb, "Federal Tax Liens and Priorities—Agenda for the Next Decade," 77 Yale L.J. 228, 266 (1967). This procedure can assure the Government of priority in the bankruptcy proceeding, even under the interpretation of Section 17a(1) (c) advanced by the district court, because Section 17a(1) specifically provides that "a discharge in bankruptcy shall not release or affect any tax lien," and under the terms of Sections 6861(a), 6321 and 6322 of the Internal Revenue Code a jeopardy assessment creates a tax lien against the taxpayer's property, which, if properly recorded pursuant to Section 6323, is valid as against the trustee in bankruptcy. See United States v. Speers, 382 U.S. 266, 86 S.Ct. 411, 15 L.Ed.2d 314 (1965). (Several courts have held, however, that such a tax lien

exceptions to Section 17a(1) themselves indicate, Congress attempted to balance against the bankrupt's interest the interests of the federal, state and local governments in the collection of tax revenues to meet their myriad responsibilities.[18] The plain meaning of the language employed by Congress in Section 17a(1) (c) indicates that this latter interest was intended to prevail in the circumstances presented by this appeal. If this exception is thought too broad in light of the remedial purposes of the 1966 amendments to the Bankruptcy Act, it is Congress, not the courts, which must amend the statute.

Finally, we note that the result which we reach is supported by the only other cases construing Section 17a(1) (c) to which we have been referred. See In re Indian Lake Estates, Inc., 428 F.2d 319 (5th Cir. 1970);[19] In re Cohen, 21 A.F. T.R.2d 992 (N.D.Ga. Nov. 3, 1967). Our interpretation is also supported by several leading authorites. See 1 Collier, Bankruptcy § 17.14(4), at 1620 (14th ed. 1967); Plumb, "Federal Liens and Priorities—Agenda for the Next Decade," 77 Yale L.J. 228, 263 (1967); cf. Kennedy, "The Bankruptcy Amendments of 1966," 1 Ga.L.Rev. 149, 177 (1967).[20]

For the foregoing reasons, the decision of the district court will be reversed and the case remanded for proceedings consistent with this opinion.

---

is not effective as to assets acquired after bankruptcy. See e. g., In re Braund, 423 F.2d 718 (9th Cir. 1970).) The use of this jeopardy procedure by the Government, however, may seriously jeopardize the taxpayer's ability to obtain both secured and unsecured credit, since future lenders would be on notice of the Government's prior lien on all of the taxpayer's property. Thus, certain taxpayers may find themselves unable to secure needed credit because of a tax lien based upon a tax claim that may prove to be partially or wholly unwarranted. The result may be the failure and bankruptcy of taxpayers who could have survived if credit had been available. Cf. Plumb, supra, at 268; but cf. Seligson, "Some Observations on the 1966 Amendments of Sections 17a and 64a and Decided Cases Thereunder," 45 Am.Bankr.L.J. 281, 299 (1971).

18. See In re Indian Lake Estates, Inc., 428 F.2d 319, 323 (5th Cir. 1970), where the court observed:

"Obviously, the damage to the public purse was the balancing policy consideration."

A loss to the Government occurs not only because of the discharge provision in Section 17a(1) but also because of the priorities set forth in Section 64a(4) of the Bankruptcy Act (see note 2, supra). Although several commentators have suggested that the tie-in is unwise, see, e. g.,

Plumb, supra, note 17, at 268, Section 64a(4) grants priority status only to those tax claims which are not released by a discharge in bankruptcy. Thus, if a tax claim is released pursuant to Section 17a (1), the Government loses not only its right to proceed against the taxpayer after his discharge in bankruptcy but also its claim in the bankruptcy proceedings of priority over general unsecured creditors.

19. The district court suggested that this decision of the Fifth Circuit was distinguishable since "[t]he court in Indian Lake Estates was dealing with a corporate debtor where the dischargeability feature was meaningless and only the decision on priority had any practical effect." 317 F.Supp. at 1005. However, there is nothing in the language of Section 17a(1) (c) to suggest that Congress intended different rules to apply to individual and corporate bankrupts. See Sections 1(4) and 1(23) of the Bankruptcy Act, 11 U.S.C. §§ 1(4) and 1(23).

20. But see Seligson, "Some Observations on the 1966 Amendments of Sections 17a and 64a and Decided Cases Thereunder," 45 Am.Bankr.L.J. 281, 292–301 (1971). Even Professor Seligson, however, concedes that "[r]ead literally, the interpretation placed upon that language [of Section 17a(1) (c)] by the appellate court in Indian Lake can hardly be challenged." 45 Am.Bankr.L.J. at 300.