In the Matter of SEAFARER FIBER GLASS YACHTS, INC., Debtor.

No. 78 C 1722.

United States District Court, E. D. New York.

Sept. 6, 1979.

Michael J. Saltser, of Battle, Fowler, Lidstone, Jaffin, Pierce & Kheel, New York City, for plaintiff.

Paul E. Dahlman, Asst. Atty. Gen., for Attorney General of the State of New York, New York City, for defendant.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge.

The New York State Tax Commission (Tax Commission) appeals from a decision of Bankruptcy Judge Rudin dated June 20, 1978, and an order dated June 30, 1978, which disallowed the Tax Commission's claim against Seafarer Fiber Glass Yachts, Inc. (Seafarer). For reasons set forth below, Judge Rudin's decision and order are affirmed in part and reversed in part.

## FACTS

Seafarer is a New York corporation which makes and sells customized fiberglass yachts. To avoid New York sales tax, Seafarer and its out-of-state customers fre-

quently arranged delivery by one of two means: (1) "sailaway" delivery, in which a Seafarer employee and the buyer sail the boat from Huntington Harbor to Long Island Sound and into Connecticut waters, where delivery is officially accomplished; or (2) "pick-up" delivery, in which the buyer hires a trucker to pick up the boat in Huntington and deliver it to the buyer out of state.

On November 14, 1974, Seafarer filed a petition for arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 *et seq.* and on November 19, 1974, Bankruptcy Judge Rudin authorized Seafarer to continue operations as debtor-in-possession. In April, 1975, the Tax Commission filed a proof of claim for $398,535.40 for taxes due from December 1, 1969 through August 31, 1974. After reaudit, the Tax Commission reduced its claim to $151,524.90 plus interest. The claim was for unpaid sales and use tax on yachts delivered to out of state residents by either "sailaway" deliveries or "pick-up" by non-ICC truckers (the Tax Commission concedes that pick-ups by ICC truckers are not subject to sales or use tax.)

Seafarer moved to expunge and disallow the claim. A hearing was held on January 17, 1977, and a decision issued on May 17, 1977, in which Judge Rudin sustained Seafarer's objections to the Tax Commission's claim. On appeal, this court reversed and remanded. The Second Circuit affirmed this court's decision. On remand, Judge Rudin held a second hearing, April 19, 1978, and issued a second decision, June 20, 1978, sustaining Seafarer's objections once again, but on different grounds. After Judge Rudin's order of June 30, 1978, the Tax Commission brought the instant appeal.

## DISCUSSION

The parties agree that this appeal presents four questions: (1) the placement of the burden of proof; (2) the taxability of the "sailaway" deliveries; (3) the taxability of the non-ICC pick-ups; and (4) the applicability of the three year discharge provision. On each of these issues, the decision of the bankruptcy judge must be affirmed unless clearly erroneous. Bankruptcy Rule 810.

## THE BURDEN OF PROOF

The proper placement of the burden of proof for tax claims in bankruptcy proceedings is explained by the court in *In re Avien,* 390 F.Supp. 1335 (E.D.N.Y.1975), aff'd 532 F.2d 273 (CA2 1976):

> While the burden of proof with respect to deductions claimed is normally on the taxpayer [citations omitted] that is not the case in bankruptcy proceedings where the burden of establishing its claim rests on the government [citation omitted]. The government is aided, however, by a strong presumption which arises in its favor by the filing of a sworn proof of claim; a *prima facie* case is established and the burden of going forward with rebutting evidence is on the debtor. [citations omitted]. The ultimate burden of persuasion remains on the government. 390 F.Supp. at 1341–42.

Without disputing the above statement on placement of the burden of proof, the parties disagree about whether additional burden of proof advantages should be accorded to the claimant in this proceeding. Because the existence or absence of these additional advantages would not affect the outcome of this appeal, the court declines to consider the issue, and accepts as sufficient the explanation of the burden of proof set forth in *Avien* above.

## THE TAXABILITY OF "SAILAWAY" DELIVERIES

Judge Rudin held that the "sailaway" deliveries were non-taxable, based on his finding of fact # 8:

> The sailaway deliveries of boats to some nonresidents of the State of New York was made by sailing the vessel from Huntington Harbor to a point in Long Island Sound beyond the geographical limits of the State of New York and within that of the State of Connecticut where the boat was turned over to the customer.

On this appeal, the Tax Commission argues that it was "not reasonable * * * to conclude that "delivery" took place in Connecticut." Brief of Tax Commission, at 20. The issue, according to the Tax Commission, is "where delivery, in the legal sense, actually occurred * * *. The fiction of delivering the boat on the other side of a buoy in the middle of Long Island Sound, is no more an actual delivery than the delivery of a car in New Jersey by the signing of the piece of paper that was condemned in [another case]." Reply brief of Tax Commission at 8. The question of the place of delivery is a question of fact, on which the finding of the bankruptcy judge must be upheld unless clearly erroneous. Bankruptcy Rule 810. The Tax Commission called no witnesses and produced no evidence at the trial before the bankruptcy judge on this factual issue. As noted in Judge Rudin's decision,

> The evidence is uncontroverted that in all cases of non-residents furnishing the non-resident documents, sailaway delivery would be made by sailing the vessel to that part of Long Island Sound beyond the jurisdiction of the State of New York and within the jurisdiction of the State of Connecticut where delivery would be made to the purchaser.
>
> Decision of Judge Rudin dated June 20, 1978 at 6–7.

◼ The Tax Commission questions the evidence adduced by the debtor on this issue. However, the debtor's evidence stands uncontroverted, and the Tax Commission has not shown Judge Rudin's findings on this issue to be clearly erroneous. Accordingly, Judge Rudin's decision and order expunging and disallowing the Tax Commission's claims as to the sailaway deliveries are affirmed.

### THE TAXABILITY OF NON–ICC PICK–UPS

Judge Rudin held that the non-ICC pick-ups were non-taxable. In finding of fact

# 9, Judge Rudin recognized that the non-ICC truckers were the employees of the non-resident purchasers, and that the boats were delivered to the buyers' employees in New York. However, Judge Rudin found the non-ICC pick-ups to be non-taxable on the following reasoning:

> Where the trucker holds an ICC trucking license, this delivery is accepted by the Tax Department as a tax free sale. Why the distinction between "pick-ups" by ICC trucker and a non-ICC trucker is made by the state has not been explained. It appears to be an arbitrary and unreasonable distinction.
>
> Decision of Judge Rudin dated June 20, 1978 at 7.

◼ Judge Rudin's decision on this point is contrary to law. Given Judge Rudin's finding that the delivery occurred in New York to an employee of the buyer,[1] the non-ICC pick-ups are subject to New York sales tax. *F & M Schaefer Brewing Co. v. Gerosa*, 4 N.Y.2d 423, 176 N.Y.S.2d 276, 151 N.E.2d 845 (1958); *Matter of Prince Motors, Inc. v. Commissioner of Motor Vehicles*, 15 A.D.2d 708, 223 N.Y.S.2d 668 (3d Dep't 1968). The failure to assess sales tax on ICC pick-ups does not bar the Tax Commission from assessing sales tax on non-ICC pick-ups. The Tax Commission is not put to the choice of taxing either all sales or none. Since the non-ICC pick-ups are clearly taxable, Judge Rudin's decision and order on this issue are reversed.

### THE APPLICABILITY OF THE THREE YEAR DISCHARGE PROVISION

Judge Rudin held that the Tax Commission's claims for taxes payable before November 14, 1971 (three years before the debtor filed its Chapter XI petition) were discharged under 11 U.S.C. § 35(a)(1). This holding was based on *In re Michaud*, 317 F.Supp. 1002 (W.D.Pa.1970), and on Judge Rudin's finding of fact # 13:

> That the debtor did not file false or fraudulent tax returns or wilfully at-

---

1. The debtor questions Judge Rudin's finding that the buyers directly employed the non-ICC truckers. Brief of debtor at 29–30. However, the debtor fails to show that Judge Rudin's finding on this issue is clearly erroneous, and the finding is therefore accepted by this court.

tempt in any manner to evade or defeat the collection of taxes.

■ Ignoring the above finding of fact, the Tax Commission argues that one of three exemptions remove the Tax Commission from the three year limit of 11 U.S.C. § 35(a)(1).

First, the Tax Commission cites 11 U.S.C. § 35(a)(1)(d), arguing that the debtor wilfully attempted to evade or defeat taxes. This position is precluded by Judge Rudin's finding of fact # 13, quoted above, which is not clearly erroneous and is, therefore, accepted by this court.

Second, the Tax Commission cites 11 U.S.C. § 35(a)(1)(e), which lifts the three year limit if the debtor has collected tax and withheld it from the government. The Tax Commission, however, fails to show that the debtor in fact collected any sales tax. Therefore, 11 U.S.C. § 35(a)(1)(e) does not apply.

Finally, the Tax Commission cites 11 U.S.C. § 35(a)(1)(c), which lifts the three year limit if the debtor (i) fails to report taxes on its return and (ii) these taxes "were not assessed prior to bankruptcy by reason of a prohibition on assessment pending exhaustion of administrative or judicial remedies available to the bankrupt."

On point (i), the Tax Commission correctly asserts that the defendant's failure to report the amount of tax liability constitutes a failure to report taxes on a return, despite the fact that debtor's return correctly reported gross sales. On this point, Judge Rudin erroneously relied on a case which had been reversed on the exact point in issue, *In re Michaud,* 317 F.Supp. 1002 (W.D.Pa.1970), *supra, reversed* 458 F.2d 953 (CA3 1972), *cert denied* 409 U.S. 876, 93 S.Ct. 125, 34 L.Ed.2d 129 (1972). See also *Wukelic v. United States,* 544 F.2d 285 (CA6 1976). These cases establish that 11 U.S.C. § 35(a)(1)(c) is triggered by a failure to report the amount of tax due, even though gross income (or gross sales) are correctly reported.

On point (ii) the Tax Commission argues that the taxes "were not assessed prior to bankruptcy by reason of a prohibition on assessment pending exhaustion of administrative * * * remedies available to the bankrupt," in that;

.The Tax Commission, as with the IRS, cannot practically assess prior to the completion of the audit. The audit was completed after commencement of the Chapter XI proceedings * * *. In *Laytan,* it was not the 90 day period between notice and assessment that was found controlling, but the practical prohibition on assessment of the need to complete the audit * * *. The *Laytan* case is dispositive.

Reply brief of Tax Commission at 9–10.

■ The Tax Commission misinterprets the scope of 11 U.S.C. § 35(a)(1)(c) and misreads *Laytan.* The purpose of 11 U.S.C. § 35(a)(1)(c) is to allow priority to tax claims not assessed due to the debtor's failure to report *and* the debtor's utilization of administrative and judicial remedies. For example, 11 U.S.C. § 35(a)(1)(c) was applied by the Third Circuit in *In re Michaud, supra,* where,

The Michauds filed timely petitions for redetermination of their liabilities in the United States Tax Court, which proceedings were pending at the times that the Michauds filed their respective petitions under the Bankruptcy Act * * *. Under the terms of § 6213 of the Internal Revenue Code, the pendency of these Tax Court proceedings precluded the assessment of these taxes by the United States, except by jeopardy assessment pursuant to § 6861.

*Id.* at Fn. 6.

Similarly, the Sixth Circuit in *Wukelic v. United States, supra,* applied 11 U.S.C. § 35(a)(1)(c) where:

[T]he IRS notified the taxpayers of a proposed deficiency * * * part of which represented a 50% civil penalty. The taxpayers then sought to pursue their internal remedies within the IRS. While they were still pursuing those remedies and before IRS had (or could have) assessed the deficiency, Wukelic * * * filed a petition in bankruptcy * * *.

*Id.* at 286.

In *Michaud* and *Wukelic,* the taxpayers had voluntarily pursued administrative and judicial remedies, precluding assessment by the tax authorities, and calling into play the exception to discharge provided by 11 U.S.C. § 35(a)(1)(c). Here, in sharp contrast, the debtor did not pursue any such remedies, and in no sense delayed assessment of the tax. The delay in assessment was caused only by the Tax Commission's delay in completing the audit. Reply brief of Tax Commission at 9–10, quoted above. Delay in the Tax Commission's own investigations is not grounds for invoking the 11 U.S.C. § 35(a)(1)(c) exception to the three year discharge standard.

The Tax Commission cites *In re Laytan Jewelers, Inc.,* 332 F.Supp. 1153 (S.D.N.Y. 1971), a one-page decision by Judge Frankel affirming the decision of the bankruptcy referee. The referee's opinion, included as an 11 page appendix to Judge Frankel's opinion, applied 11 U.S.C. § 35(a)(1)(c) on the following reasoning:

> The Internal Revenue Code * * * clearly states that an unassessed federal tax liability is prohibited and therefore not discharged if the statutory notice of deficiency has not gone out regardless of how old the tax liability may be. [*Indian Lake Estates v. Stewart*] 428 F.2d [319] at 324. Certainly, this is so where an audit is pending pursuant to the government's desire to take a hard look at a business tax return and where administrative negotiations with extensions of the statute of limitations are pending and executory. 428 F.2d at 324. And until the audit has been concluded, and decisions made as to whether there is any deficiency in taxes at all (for, surely not all audits mandate that result), there can be no deficiency noticed to the taxpayer which he may pay or contest. Without a deficiency notice there can be no assessment; even with a deficiency notice, assessment may be prohibited temporarily. The pendency of all the steps before assessment can lawfully be made must be held to be the pendency of administrative remedies available to the bankrupt within the meaning of clause (c) to the Section 17(a) [USC § 35(a)(L)(c) proviso].

> *Id.* at 1166.

In *Laytan,* the IRS audited returns filed more than three years prior to the filing of a bankruptcy petition, in order to check a loss carry-back claimed by the bankrupt corporation. The referee held that the audit was "an administrative * . * * remed[y] available to the bankrupt", under 11 U.S.C. § 35(a)(1)(c), since:

> The audit procedure itself is not a one-sided *ex parte* process. The taxpayer may be called upon to explain the content of his return. He may be asked to substantiate his entries. He, in turn, may ask that the audit take a different tack than it is taking.

> *Id.* at 1165.

In *Laytan,* it appears that the bankrupt did indeed participate in the audit. More importantly, the audit involved returns filed more than three years before bankruptcy only because the bankrupt itself had claimed a loss carry-back for those past years, and this loss carry-back was brought into question by research into more recent tax returns.

Here, it must be repeated, the debtor in no sense caused the delay in assessment. The Tax Commission argues that delay was caused by the debtor's failure to correctly report the amount of tax due, necessitating an audit. By this logic, any misstatement of tax liability would justify an audit, which in turn would justify a delay in assessment. Such logic would effectively destroy the general rule of 11 U.S.C. § 35, which discharges the bankrupt from all taxes except those "due and owing by the bankrupt * * * within three years preceding bankruptcy." Because the delay in assessment here was not due to reliance on administrative or judicial remedies but was due solely to delay in the Tax Commission's own investigations, 11 U.S.C. § 35(a)(1)(c) does not apply.

Based on the above reasoning, all tax claims on non-ICC pick-ups which became due and owing before November 14, 1971

must be discharged, under 11 U.S.C. § 35(a), since the exceptions provided by 11 U.S.C. § 35(a)(1)(c), (d) & (e) do not apply.[2]

### CONCLUSION

For reasons set forth above, the decision of the bankruptcy judge expunging and disallowing the tax claims on sailaway deliveries and on claims due and owing before November 14, 1971, is affirmed. The decision of the bankruptcy judge expunging and disallowing tax claims due and owing since November 14, 1971 on non-ICC pickups is reversed. The Clerk shall enter judgment accordingly.

SO ORDERED.

**2.** Of the Tax Commission's adjusted claim of $151,524.90, only $25,451.70 is claimed on taxes payable before November 14, 1971. The parties have not detailed what percentage of this smaller sum is claimed in connection with the non-ICC pick-ups. The court assumes that the parties can agree on the figures without judicial assistance.